## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NICOLE NEILL and ROBERT NEILL,** | : |
| **both INDIVIDUALLY and as** | : |
| **as CO-ADMINISTRATORS OF THE** | : |
| **ESTATE OF ROBERT NEILL,** | : |
| **DECEASED** | : |
| 10 S 17th St | : |
| Harrisburg, PA 17104-1377 | : |
| **Plaintiffs** | : |
| **v.** | : |
| | : |
| **MT. JOY BOROUGH** | : |
| 21 East Main Street | : |
| Mount Joy, PA 17552 | : |
| **and** | : |
| **TYSON WOODS** | : |
| 21 East Main Street | : |
| Mount Joy, PA 17552 | : |
| **and** | : |
| **KYLE HOSKINS** | : |
| 21 East Main Street | : |
| Mount Joy, PA 17552 | : |
| **and** | : |
| **SUSQUEHANNA REGIONAL** | : |
| **POLICE DEPARTMENT** | : |
| 188 Rock Point Road | : |
| Marietta, PA 17547 | : |
| **and** | : |
| **DAVID CLANCY, III** | : |
| 188 Rock Point Road | : |
| Marietta, PA 17547 | : |
| **and** | : |
| **JEFFREY MENET** | : |
| 21 Springhouse Road | : |
| Ephrata, PA 17522 | : |
| **and** | : |
| **DAWN CARPENTER** | : |
| 21 Springhouse Road | : |
| Ephrata, PA 17522 | : |
| **and** | : |
| **TASER INTERNATIONAL, INC.** | : |
| 17800 N. 85th St. | : |
| Scottsdale, AZ 85255-6311 USA | : |

| Defendants | : |
|---|---|
|  | : |
|  | : |

## AMENDED COMPLAINT

Plaintiffs Nicole Neill and Robert Neill, both Individually and as Co-Administrators of the Estate of Robert A. Neill, Deceased, by and through their attorneys, file the within Amended Complaint against the above-captioned defendants, and in support thereof, state as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action against the Defendants pursuant to 42 U.S.C. §1983 as well as 28 U.S.C. §1331.  This Court has jurisdiction over the pendant state law tort claims pursuant to 28 U.S.C. §1367(a).

2.      Venue is properly vested in this Court because Plaintiff-decedent and the Defendants are residents of the Eastern District of Pennsylvania, the acts complained of occurred within the jurisdiction of the Eastern District of Pennsylvania (specifically, Lancaster County), and the defendant product-manufacturer (Taser International, Inc.) conducts regular and significant business within the Eastern District of Pennsylvania.

### PARTIES

3.      Plaintiffs, Nicole Neill and Robert E. Neill (hereinafter collectively referred to as "Plaintiffs") as the duly-appointed Co-Administrators of the Estate of Robert A. Neill (hereinafter referred to as "Plaintiff-decedent") are adult citizens and residents of the Commonwealth of Pennsylvania, and are the surviving children of Plaintiff-decedent.

4.      At all times relevant hereto, Plaintiff-decedent resided at 3 E. Haverestview South, in Mount Joy, PA.

2

5.      At all times relevant hereto, Plaintiff-decedent, a Vietnam War veteran, suffered from mental and emotional illnesses and disabilities, including seizure disorder, schizophrenia, bipolar disorder, and post traumatic stress disorder ("PTSD"). Upon information and belief, Plaintiff-decedent's mental and emotional health was known to all or some of the police departments and police officers identified, or in the process of being identified as defendants to this litigation, prior to November 6, 2010.

6.      On December 17, 2010, Letters of Administration were issued by the Register of Wills of Lancaster County for Plaintiffs to act as co-administrators for the Estate of Plaintiff-decedent, who also predeceased his adult daughter, Eva Neill.

7.      Defendant Mount Joy ("Mt. Joy")  Borough is a borough in the Commonwealth of Pennsylvania, duly organized as such under the laws of the Commonwealth, and has designated offices located at 21 East Main Street, Mount Joy, PA 17552.  At all relevant times hereto, Defendant Mount Joy Borough acted by and through its agents, servants and/or employees.  It is responsible for the policies, procedures, practices and customs created, promulgated, implemented, enforced and utilized at and by the Mt. Joy Police Department, including such policies, procedures, practices and customs that relate to force continuums, electronic control weapons (including tasers), use of O.C./chemical spray, physical restraint of suspects, conflict resolution, and first aid, and does so through its various agencies, agents, departments, representatives, officials, and/or employees including but not limited to Defendants Tyson Woods and Kyle Hoskins.

8.      Attached to this Complaint as Exhibit "A" is, upon information and belief, Mt. Joy Borough's "Use of Force Policy" which provides no limitations on the duration that ECWs

3

can be deployed against a suspect, and specifically and expressly permits the deployment of ECWs for levels beneath the "less lethal" designation on the force continuum/force progression. Specifically, on Mt. Joy's eight-step force progression policy, "less lethal force" is designated at Step VII, whereas ECW deployment is authorized as early as Step III.

9.     Defendant Tyson Woods (hereinafter "Officer Woods")  is an individual who was, at all relevant times hereto, a Police Officer of the Mount Joy Police Department, operating in the course and scope of his employment, and under the color and guise of the laws of the Commonwealth of Pennsylvania and the laws of Mount Joy Borough.  Officer Woods is being sued in both his official and individual capacity.

10.     Defendant Kyle Hoskins (hereinafter "Officer Hoskins") is an individual who was, at all relevant times hereto, a Police Officer of the Mount Joy Police Department, operating in the course and scope of his employment, and under the color and guise of the laws of the Commonwealth of Pennsylvania and the laws of Mount Joy Borough.   Officer Hoskins is being sued in both his official and individual capacity.

11.     Defendant Susquehanna Regional Police Department is a police department in the Commonwealth of Pennsylvania, duly organized as such under the laws of the Commonwealth, and has offices located at 188 Rock Point Road, Marietta, PA 17547.  At all relevant times hereto, Defendant Susquehanna Regional Police Department acted by and through its agents, servants and/or employees. It is responsible for the policies, procedures, practices and customs created, promulgated, implemented, enforced and utilized at and by the Susquehanna Regional Police Department, including such policies, procedures, practices and customs that relate to force continuums, physical restraint of suspects, conflict resolution, and first aid, and does so through its various agencies,

4

agents, departments, representatives, officials, and/or employees including but not limited to Defendant David Clancy, III.

12.     Defendant David Clancy, IIII (hereinafter "Officer Clancy") is an individual who was, at all relevant times hereto, a Police Officer of the Susquehanna Regional Police Department, operating in the course and scope of his employment, and under the color and guise of the laws of the Commonwealth of Pennsylvania. Officer Clancy is being sued in both his official and individual capacity.

13.     Defendant Jeffrey Menet (hereinafter "Trooper Menet") is an individual who was, at all relevant times hereto, a Police Officer of the Pennsylvania State Police. For purposes of this Complaint, Officer Menet is being sued exclusively in his individual capacity.

14.     Defendant Dawn Carpenter (hereinafter "Trooper Carpenter") is an individual who was, at all relevant times hereto, a Police Officer of the Pennsylvania State Police. For purposes of this Complaint, Officer Carpenter is being sued exclusively in her individual capacity.

15.     Defendant Taser International, Inc. (hereinafter "Defendant Taser") is a corporation that designs, manufactured, distributes, and sells electronic control weapons ("ECWs"), including the tasers at issue in this case. Upon information and belief, Defendant Taser provides training and training materials for ECWs, including the tasers at issue in this case.

## FACTUAL BACKGROUND

16.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

17.     Upon information and belief, on or about November 6, 2010, at approximately 4:00 a.m., Plaintiff-decedent placed a 911 phone call to request assistance at his residence.

5

18.     Upon information and belief, in response to Plaintiff-decedent's 911 phone call, or as a result of subsequent dispatches, Officer Woods arrived at Plaintiff-decedent's residence.

19.     Upon information and belief, in response to Plaintiff-decedent's 911 phone call, or as a result of subsequent dispatches, Officer Hoskins arrived at Plaintiff-decedent's residence.

20.     Upon information and belief, in response to Plaintiff-decedent's 911 phone call, or as a result of subsequent dispatches, Officer Clancy arrived at Plaintiff-decedent's residence.

21.     Upon information and belief, in response to Plaintiff-decedent's 911 phone call, or as a result of subsequent dispatches, Officer Menet arrived at Plaintiff-decedent's residence.

22.     Upon information and belief, in response to Plaintiff-decedent's 911 phone call, or as a result of subsequent dispatches, Officer Carpenter arrived at Plaintiff-decedent's residence.

23.     Upon information and belief, Plaintiff-decedent, at all material times during the incident more particularly described herein, did not act and/or did not continue to act in a manner that presented a significant threat of serious injury or harm to the police officers present.

24.     Upon information and belief, Plaintiff-decedent was already demonstrating shortness of breath when all or some of the police officers first arrived on scene.

25.     Upon information and belief, none of the police officers on scene requested, called, or otherwise considered a Crisis Intervention Team ("CIT") or any similar unit or backup personnel which possessed adequate training for interventions with a person suffering from a mental or emotional disability, or potentially suffering from a mental or emotional disability.

26.     Upon information and belief, all or some of the police officers on scene should have known that Plaintiff-decedent was afflicted with mental and/or emotional disabilities, pursuant to prior interactions between local law enforcement, including Mount Joy Police Chief John O'Connell,

6

and Plaintiff-decedent.

27.     All of the police officers on scene were under an obligation and duty to abide by applicable and/or reasonable force continuums, including the use of ECWs (including tasers), O.C./chemical spray, and physical restraint, so as to avoid excessive force and serious and fatal injuries to all individuals seized or in the process of being seized, including Plaintiff-decedent.

28.     Upon information and belief, Officer Woods discharged an ECW fifteen (15) separate times, ranging in duration from two (2) seconds to twenty eight (28) seconds, within an approximately ten minute period, for an aggregate total of one hundred and nineteen (119) seconds, striking Plaintiff-decedent, and thereby subjecting him to an excessive and unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

29.     Upon information and belief, Officer Clancy discharged an ECW twice within an approximately sixteen second period, for an aggregate total of nine (9) seconds, striking Plaintiff-decedent, and thereby subjecting him to an excessive and unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

30.     Upon information and belief, Plaintiff-decedent was handcuffed during a portion of the approximately one hundred and twenty eight (128) seconds of aggregate ECW deployment. deployment.

31.     Upon information and belief, Officer Woods utilized significant, excessive, and unreasonably dangerous physical restraint techniques upon Plaintiff-decedent, including after Plaintiff-decedent was handcuffed, thereby enhancing and/or causing Plaintiff-decedent's respiratory and circulatory strain and distress, which included pressing on Plaintiff-decedent's prone body, kicking Plaintiff-decedent, and tying/binding Plaintiff-decedent with rope.

32.     Upon information and belief, Officer Hoskins utilized significant, excessive, and unreasonably dangerous physical restraint techniques upon Plaintiff-decedent, including after Plaintiff-decedent was handcuffed, thereby enhancing and/or causing Plaintiff-decedent's respiratory and circulatory strain and distress, which included pressing on Plaintiff-decedent's prone body.

33.     Upon information and belief, while Plaintiff-decedent was handcuffed and being repeatedly subjected to ECW deployments, Officer Clancy utilized significant, excessive, and unreasonably dangerous physical restraint techniques upon Plaintiff-decedent thereby enhancing and/or causing Plaintiff-decedent's respiratory and circulatory strain and distress, which included pressing on Plaintiff-decedent's prone body, kicking Plaintiff-decedent, punching Plaintiff-decedent's legs with his fists, and tying/binding Plaintiff-decedent with rope.

34.     Upon information and belief, while Plaintiff-decedent was handcuffed and being repeatedly subjected to ECW deployments and physical restraint, Trooper Menet repeatedly and excessively deployed OC/chemical spray directly into Plaintiff-decedent's face from a distance of approximately five (5) feet, causing Plaintiff-decedent to suffer enhanced and unreasonably dangerous respiratory strain and distress.  Upon information and belief, Trooper Menet was, on at least one occasion, directed by Officer Woods to deploy O.C./chemical spray.

35.     Upon information and belief, while Plaintiff-decedent was handcuffed and being repeatedly subjected to ECW deployments, Trooper Menet utilized significant, excessive, and unreasonably dangerous physical restraint techniques upon Plaintiff-decedent thereby enhancing and/or causing Plaintiff-decedent's respiratory and circulatory strain and distress, which included pressing on Plaintiff-decedent's prone body, including Plaintiff-decedent's neck, and tying/binding Plaintiff-decedent with rope.

36.     Upon information and belief, while Plaintiff-decedent was handcuffed and being repeatedly subjected to ECW deployments, Trooper Carpenter utilized significant, excessive, and unreasonably dangerous physical restraint techniques upon Plaintiff-decedent thereby enhancing and/or causing Plaintiff-decedent's respiratory and circulatory strain and distress, which included pressing on Plaintiff-decedent's prone body and tying/binding Plaintiff-decedent with rope.

37.     Upon information and belief, Officer Woods did not provide adequate or timely first aid to Plaintiff-decedent, following the application of ECWs, O.C./chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

38.     Upon information and belief, Officer Hoskins did not provide adequate or timely first aid to Plaintiff-decedent, following the application of ECWs, O.C./chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

39.     Upon information and belief, Officer Clancy did not provide adequate or timely first aid to Plaintiff-decedent, following the application of ECWs, O.C./chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

40.     Upon information and belief, Trooper Menet did not provide adequate or timely first aid to Plaintiff-decedent, following the application of ECWs, O.C./chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

41.     Upon information and belief, Trooper Carpenter did not provide adequate or timely

9

first aid to Plaintiff-decedent, following the application of ECWs, O.C./chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

42.     Upon information and belief, Officer Clancy, Officer Hoskins, Officer Clancy, Trooper Menet, and/or Trooper Carpenter did not permit responding EMS personnel to provide any necessary, material or timely first aid to Plaintiff-decedent, following the application of ECWs, O.C./chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

43.     Upon being loaded into an ambulance, it was discovered by EMS personnel that Plaintiff-decedent was asystole, and attempts to resuscitate Plaintiff-decedent failed.

44.     Plaintiff-decedent's cause of death was ruled by the investigating forensic pathologist to be "cardiac dysrhythmia".

45.     The conduct of Defendants Mt . Joy Borough, Officer Woods, Officer Hoskins, Susquehanna Regional Police Department, Officer Clancy, Trooper Menet, and Trooper Carpenter (hereinafter collectively referred to as "The Law Enforcement Defendants") as set forth above and herein, violated Plaintiff-decedent's constitutional rights as guaranteed by the United States Constitution, and as remediable pursuant to 42 U.S.C. §1983.

46.     As stated previously, at all times relevant hereto, the Law Enforcement Defendants acted either in their individual capacity or under the color and guise of state and local laws.

47.     The conduct of the Law Enforcement Defendants as set forth above and herein, acting under the color and guise of state and local law, was recklessly and deliberately indifferent to the safety, bodily integrity, well-being, and life of Plaintiff-decedent, and was committed in conscious

10

disregard of the substantial and/or unjustifiable risk of causing harm to Plaintiff-decedent, and was so egregious as to shock the conscience.

48.     Upon information and belief, Plaintiff-decedent was in the custody of the Law Enforcement Defendants, or was in the process of being placed into custody, thereby creating a special relationship between the Law Enforcement Defendants and Plaintiff-decedent. As such, the Law Enforcement Defendants were entrusted with and responsible for Plaintiff-decedent's protection, safety, well being and life while he was within (or was in the process of being placed in) their custody, and the Law Enforcement Defendants were, likewise, required to, provide reasonable, appropriate and timely medical care and treatment to Plaintiff-decedent.

49.     As a direct and proximate result of the Law Enforcement Defendants' excessive use of force, and unreasonably dangerous conduct, as described above and herein, Plaintiff-decedent was caused to suffer grievous physical injuries, significant conscious pain and suffering, and an agonizing death.

50.     The proximate conduct of the Law Enforcement Defendants, as described above and herein, was undertaken in bad faith and with excessive and unreasonable force, malice, bad motive, evil intent and deliberate and/or reckless indifference to and callous disregard for Plaintiff-decedent's constitutional rights to be free from physical assault causing grievous injuries, harm and death pursuant to the Fourth and Fourteenth Amendment to the United States Constitution, as well as Plaintiff-decedent's right to appropriate and timely medical care as a result of being in (or in the process of being placed in) the custody of the Law Enforcement Defendants.

51.     Upon information and belief, all ECWs utilized on Plaintiff-decedent were designed, manufactured, tested, marketed, distributed, and sold by Defendant Taser.

11

## COUNT I
### PLAINTIFFS v. THE LAW ENFORCEMENT DEFENDANTS
### USE OF UNREASONABLE, MALICIOUS AND/OR EXCESSIVE FORCE

52.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

53.     Upon information and belief, on November 6, 2010, the Law Enforcement Defendants, despite being aware that Plaintiff-decedent was already short of breath and suffered from mental and emotional disabilities, utilized unreasonable, malicious, and/or excessive and unreasonably dangerous force on Plaintiff-decedent; specifically, the dischargement of multiple ECWs on Plaintiff-decedent, the utilization of one or more ECWs in "Drive Stun Mode" on Plaintiff-decedent, the dischargement of O.C./chemical spray directly into Plaintiff-decedent's face, and the utilization of significant and unreasonably dangerous restraint techniques upon Plaintiff-decedent, including pressing on Plaintiff-decedent's prone body, kicking Plaintiff-decedent, punching Plaintiff-decedent, and tying/binding Plaintiff-decedent with rope.

54.     Plaintiff-decedent had a fundamental and well-established right to be secure in his person and a right not be subjected to excessive and unreasonable force pursuant to the Fourth Amendment and Fourteenth Amendment of the United States Constitution.

55.     The force utilized by the Law Enforcement Defendants was unreasonable, malicious, excessive, unnecessary, dangerous, willful and wanton, and unconstitutional.

56.     The unreasonable, malicious, excessive, and dangerous force used by the Law Enforcement Defendants was grossly disproportionate to any need for use of force, was in violation of applicable force continuum policy or, in the case of the Mt. Joy Borough "Use of Force Policy" was in connection with an unconstitutional, excessive, and unreasonably dangerous force continuum

policy, and/or was inspired by malice rather than careless or unwise zeal.

57.     The unreasonable, malicious, excessive, and dangerous force used by the Law Enforcement Defendants served no legitimate law enforcement objective.

58.     The unreasonable, malicious, excessive and dangerous force used by the Law Enforcement Defendants amounted to an abuse of official power and authority.

59.     The unreasonable, malicious, excessive and dangerous force used by the Law Enforcement Defendants was so egregious as to shock the conscience.

60.     The unreasonable, malicious, excessive and dangerous force used by the Law Enforcement Defendants evidenced a deliberate indifference to the life, safety, well-being of Plaintiff-decedent.

61.     The unreasonable, malicious, excessive and dangerous forced used by the Law Enforcement Defendants came as a result of their unreasonable seizure of Plaintiff-decedent.

62.     The Law Enforcement Defendants' use of unreasonable, malicious, excessive and dangerous force on Plaintiff-decedent proximately caused his death in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries and death.

63.     The actions of the Law Enforcement Defendants constitute willful and wanton misconduct in disregard of the rights, health, well-being and safety of Plaintiff-decedent and warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT II
## PLAINTIFFS v. THE LAW ENFORCEMENT DEFENDANTS
## FAILURE TO CREATE, ADOPT, PROMULGATE,
## IMPLEMENT, REVISE, UPDATE, UTILIZE, AND/OR ENFORCE
## APPROPRIATE PROCEDURES, POLICIES AND PROTOCOLS

64.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

65.    Upon information and belief, on or about November 6, 2010, the Law Enforcement Defendants used excessive and unreasonably dangerous force on Plaintiff-decedent, including while Plaintiff-decedent was in their custody, or was in the process of being placed in their custody.

66.    On and prior to November 6, 2010, the Law Enforcement Defendants knew or should have known that prolonged and repeated electrical dischargement from an ECW, or the aggregate effect of multiple electrical dischargements from multiple ECWs, creates an unreasonably high risk of serious bodily injury or death, particularly if the recipient of the electrical dischargement is suffering from preexisting respiratory health problems, circulatory health problems, or mental/emotion health problems, all or some of which Plaintiff-decedent was exhibiting.

67.    On and prior to November 6, 2010, the Law Enforcement Defendants knew or should have known that the act of repeatedly using an ECW in "Drive Stun Mode", particularly when this act is accomplished in addition to prolonged and repeated electrical dischargement from an ECW, or the aggregate effect of multiple electrical dischargements from multiple ECWs, creates an unreasonably high risk of serious bodily injury or death, particularly if the recipient of these acts is suffering from pre-existing respiratory health problems, circulatory health problems, and/or mental/emotion health problems, as Plaintiff-decedent was exhibiting.

68.   On and prior to November 6, 2010, the Law Enforcement Defendants knew or should have known that the act of using O.C./chemical spray, in addition to "Drive Stunning" and prolonged and repeated electrical dischargement from an ECW, or the aggregate effect of multiple electrical dischargements from multiple ECWs, creates an unreasonably high risk of serious bodily injury or death, particularly if the recipient of these acts is suffering from pre-existing respiratory health problems, circulatory health problems, and/or mental/emotion health problems, as Plaintiff-decedent was exhibiting.

69.   On and prior to November 6, 2010, the Law Enforcement Defendants knew or should have known that the act of using significant physical restraint methods, such as pressing on a prone individual's body as well as tying/binding with rope, in addition to using O.C./chemical spray, "Drive Stunning" and prolonged and repeated electrical dischagement from an ECW, or the aggregate effect of multiple electrical dischargements from multiple ECWs, creates an unreasonably high risk of serious bodily injury or death, particularly if the recipient of these acts is suffering from pre-existing respiratory health problems, circulatory health problems, and/or mental/emotion health problems, as Plaintiff-decedent was exhibiting.

70.   The Law Enforcement Defendants had a significant prior opportunity to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols to help protect Plaintiff-decedent from serious and foreseeable harm, including the serious risk of harm and death associated with exposure to a combination of multiple ECW electrical deployments, "Drive Stunning", the use of O.C./chemical spray, and the use of significant physical restraint such as pressing on a prone individual's body as well as tying/binding with rope, particularly when the individual who is the recipient of these methods is suffering from pre-existing respiratory health

problems, circulatory health problems, and/or mental/emotion health problems, as Plaintiff-decedent was exhibiting.

71.     The Law Enforcement Defendants intentionally, recklessly, and/or negligently failed to create, adopt, promulgate, implement, revise, update, utilize, and enforce appropriate and reasonable policies, procedures, and/or protocols regarding the use of force (see Exhibit "A") including but not limited to force continuums, use of ECWs, use of "Drive Stun Mode", use of O.C./chemical spray, and use of significant physical restraints such as pressing on a prone individual's body as well as tying/binding with rope, and the combination thereof, including when the recipient of these forcible methods is suffering from pre-existing respiratory health problems, circulatory health problems, and/or mental/emotion health problems, as Plaintiff-decedent was exhibiting.

72.     Specifically, Mt. Joy's "Use of Force Policy" specifically and recklessly designates the use of ECW deployments at steps significantly lower (e.g. Steps III and IV) than the Step VII "less lethal" designation where ECW deployment is properly vested.  See Exhibit "A".

73.     Moreover, Mt. Joy's "Use of Force Policy" does not, in an excessive, reckless and unreasonably dangerous manner, provide any limitations as to the amount or duration of ECW deployments.  See Exhibit "A".

74.     Additionally, the Law Enforcement Defendants intentionally, recklessly, and/or negligently failed to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols regarding the timely application of first aid after the use of ECWs, the use of ECWs in "Drive Stun Mode", the use of O.C./chemical spray, and the use of significant physical restraints such as pressing on a prone individual's body as well as tying/binding

with rope, and the combination thereof, including when the recipient of these forcible methods is suffering from pre-existing respiratory health problems, circulatory health problems, and/or mental/emotion health problems, as Plaintiff-decedent was exhibiting.

75.     The Law Enforcement Defendants' failure to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols, demonstrated a reckless indifference to the safety, health, well-being and life of Plaintiff-decedent.

76.     The Law Enforcement Defendants' failure to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols proximately caused Plaintiff-decedent's death in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries and death.

77.     The actions of the Law Enforcement Defendants constitute willful and wanton misconduct in disregard of the rights, health, well-being and safety of Plaintiff-decedent and warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

**COUNT III**
**PLAINTIFFS v. THE LAW ENFORCEMENT DEFENDANTS**
**FAILURE TO PROVIDE TIMELY AND REASONABLE MEDICAL CARE**
**TO INDIVIDUALS THAT HAVE BEEN SEIZED, ARE IN THE PROCESS**
**OF BEING PLACED IN CUSTODY, AND/OR ARE IN CUSTODY**

78.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

79.     When Plaintiff-decedent was seized by the Law Enforcement Defendants, particularly

after Plaintiff-decedent was placed in handcuffs, a special relationship was created that, in turn, entitled Plaintiff-decedent to be reasonably provided with timely medical care, including access to reasonable emergency medical care and treatment for legitimate medical needs by the Law Enforcement Defendants.

80.     Following the imposition of unreasonable, malicious, excessive and unreasonably dangerous force by the Law Enforcement Defendants upon Plaintiff-decedent, it was, or should have been readily apparent and obvious to the Law Enforcement Defendants that Plaintiff-decedent required immediate and urgent medical attention for the injuries he had sustained as a result of being energized by multiple ECWs, "drive stunned", subjected to an electrical current for an unreasonably dangerous duration and strength, O.C./chemical sprayed, and subjected to significant and unreasonably dangerous physical restraint methods, including having his prone body pressed upon, and being tied and bound with rope.

81.     Despite Plaintiff-decedent's obvious injuries and significant need for urgent medical assistance and treatment, the Law Enforcement Defendants intentionally, recklessly, and/or negligently denied and/or refused and/or failed to render appropriate and/or timely medical aid to Plaintiff-decedent and/or unreasonably prevented or delayed timely emergency medical assistance and treatment from EMS personnel.

82.     The Law Enforcement Defendants possessed neither the right nor the authority to disregard the medical needs of individuals seized, in the process of being placed in custody, and/or in their custody, including Plaintiff-decedent, particularly when the medical needs were emergent and obvious in nature.

83.    The Law Enforcement Defendants, in willfully, wantonly, and recklessly ignoring the obvious, urgent and serious medical needs of Plaintiff-decedent while he was in their custody and the substantial risk of serious injury and death, demonstrated deliberate indifference to Plaintiff-decedent.

84.    The Law Enforcement Defendants' intentional, reckless, and/or negligent denial and/or refusal and/or failure to render appropriate and/or timely medical aid to Plaintiff-decedent and/or unreasonable prevention or delay of timely emergency medical assistance from EMS personnel, proximately caused Plaintiff-decedent's death in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries and death.

85.    The actions of the Law Enforcement Defendants constitute willful and wanton misconduct in disregard of the rights, health, well-being and safety of Plaintiff-decedent and warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

**COUNT IV**
**PLAINTIFFS v. THE LAW ENFORCEMENT DEFENDANTS**
**STATE CREATED DANGER**

86.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

87.    Despite the Law Enforcement Defendants' actual and/or constructive knowledge that Plaintiff-decedent was suffering from pre-existing respiratory problems, circulatory problems, and

mental/emotional health problems, and despite their knowledge that death or serious injury could occur to Plaintiff-decedent as a result of being energized by multiple ECWs, "drive stunned", subjected to an electrical current for an unreasonably dangerous duration and strength, O.C./chemical sprayed, and subjected to significant and unreasonably dangerous physical restraint methods, including having his prone body pressed upon, and being tied and bound with rope, the Law Enforcement Defendants knowingly and intentionally subjected Plaintiff-decedent to the aforementioned acts.

88.    It was reasonably foreseeable to the Law Enforcement Defendants that Plaintiff-decedent would be seriously injured or killed by the combination of being energized by multiple ECWs, "drive stunned", subjected to an electrical current for an unreasonably dangerous duration and strength, O.C./chemical sprayed, and subjected to significant and unreasonably dangerous physical restraint methods, including having his prone body pressed upon, and being tied and bound with rope.

89.    The Law Enforcement Defendants affirmatively abused and/or misused their official authority which created an opportunity for danger to Plaintiff-decedent that did not otherwise exist, which came as a result of the Law Enforcement Defendants knowingly and/or intentionally energizing Plaintiff-decedent with multiple ECWs, "drive stunning" Plaintiff-decedent, subjecting Plaintiff-decedent to an electrical current for an unreasonably dangerous duration and strength, O.C./chemical spraying Plaintiff-decedent, and subjecting Plaintiff-decedent to significant and unreasonably dangerous physical restraint methods, including having his prone body pressed upon, and being tied and bound with rope, even though the Law Enforcement Defendants knew or should have known that Plaintiff-decedent would sustain serious injury or die from these actions.

90.    The Law Enforcement Defendants' state-created dangers proximately caused Plaintiff-decedent's death in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries and death.

91.    The actions of the Law Enforcement Defendants constitute willful and wanton misconduct in disregard of the rights, health, well-being and safety of Plaintiff-decedent and warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

### COUNT V
### PLAINTIFFS vs. THE LAW ENFORCEMENT DEFENDANTS
### FAILURE TO TRAIN AND SUPERVISE PERSONNEL AT THE INSTITUTIONAL AND POLICY LEVEL

92.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

93.    Plaintiff-decedent had fundamental and well-established rights to be free from unreasonable, malicious, excessive and dangerous force by the Law Enforcement Defendants, and to not be denied access to medical care and treatment for legitimate medical needs once he was seized, in the process of being placed in custody, or in the custody of the Law Enforcement Defendants.

94.    The infliction of unreasonable, malicious, excessive and dangerous force upon Plaintiff-decedent by the Law Enforcement Defendants, and the Law Enforcement Defendant's subsequent failure to provide Plaintiff-decedent with adequate and timely medical care, violated Plaintiff-decedent's substantive rights guaranteed by the United State Constitution.

95.     The violations of Plaintiff-decedent's substantive constitutional rights, and his resulting catastrophic injuries and death, were caused by the Law Enforcement Defendants' failure, at an institutional and policy level, to properly supervise, educate, instruct, train and/or control their personnel in general, including but not limited to the extraordinarily dangerous "Use of Force Policy" utilized by Defendant Mt. Joy Borough (see Exhibit "A") as well as in the following specific respects:

    a.    **Failing to adequately supervise, instruct, train, and educate their officers in regard to appropriate force continuums, and ensure that appropriate force continuums were properly implemented as a matter of policy and, thereafter enforced and followed, so as to expose members of the public, including Plaintiff-decedent, to the least possible level of force, including no force whatsoever;**

    b.    **Failing to place ECW deployment in the appropriate "less lethal" step (Step VII) in the applicable "Use of Force Policy" (see Exhibit "A");**

    c.    **Intentionally, recklessly, and/or negligently designating ECW deployment at unreasonably low steps (Steps III and IV) in the applicable "Use of Force Policy" (see Exhibit "A");**

    d.    **Intentionally, recklessly, and/or negligently failing to provide any limitations as to the number and duration of ECW deployments that could be utilized on a suspect in the applicable "Use of Force Policy" (see Exhibit "A");**

    e.    **Intentionally, recklessly, and/or negligently failing to provide any specific force continuum/use of force policy considerations insofar as interacting with suspects known or believed to be suffering from mental and emotional health issues in the applicable "Use of Force Policy", aside from a cursory notation, with no description, under "Suspect Factors" (see Exhibit "A", p. 6);**

    f.    **Failing at the institutional and policy level to adequately supervise, instruct, train, and educate their officers in regard to interactions with individuals suffering from mental and emotional health issues, including Plaintiff-decedent, so that proper communication can occur, and potentially violent confrontations can be avoided, including, but not limited to, recognizing the need for a Crisis Intervention Team and**

requesting assistance therefrom;

g.    Failing at the institutional and policy level to adequately supervise, instruct, train, and educate their officers in the proper use of ECW deployment;

h.    Failing at the institutional and policy level to adequately supervise, instruct, train, and educate their officers in the proper use of ECW deployment in "Drive Stun Mode";

i.    Failing at the institutional and policy level to adequately supervise, instruct, train, and educate their officers regarding the increased risk of serious injury or death that accompanies a prolonged electrical shock administered by the ECW, including but not limited to aggregate duration when multiple ECWs are deployed;

j.    Failing at the institutional and policy level to adequately supervise, instruct, train, and educate their officers in the proper use of O.C./chemical spray, including when an ECW has additionally been deployed;

k.    Failing at the institutional and policy level to adequately supervise, instruct, train, and educate their officers in the proper use of significant physical restraint methods (including but not limited to pressing on the prone body of a suspect and using rope to tie and bind) including when an ECW and/or O.C./chemical spray has additionally been deployed;

l.    Failing at the institutional and policy level to adequately supervise, instruct, train, and educate their officers to recognize the signs of pre-existing respiratory distress and the resulting health ramifications associated with using ECWs, O.C./chemical spray, and significant physical restraint methods (including but not limited to pressing on the prone body of a suspect and using rope to tie and bind) on such persons;

m.    Failing at the institutional and policy level to adequately supervise, instruct, train, and educate their officers to recognize the signs of pre-existing circulatory distress and the resulting health ramifications associated with using ECWs, O.C./chemical spray, and significant physical restraint methods (including but not limited to pressing on the prone body of a suspect and using rope to tie and bind) on such persons;

n.    Failing at the institutional and policy level to adequately supervise,

instruct, train, and educate their officers to recognize the signs of pre-existing mental and/or emotional health disabilities, and the resulting health ramifications associated with using ECWs, O.C./chemical spray, and significant physical restraint methods (including but not limited to pressing on the prone body of a suspect and using rope to tie and bind) on such persons;

o.  Failing at the institutional and policy level to adequately instruct, train, educate, and warn their officers that ECWs, particularly when repeatedly deployed for a prolonged period are capable of producing lethal injuries (See Exhibit "A");

p.  Failing at the institutional and policy level to adequately instruct, train, educate, and warn their officers that ECWs, particularly when repeatedly deployed for a prolonged period and combined with the use of O.C./chemical spray, are capable of producing lethal injuries (See Exhibit "A");

q.  Failing at the institutional and policy level to adequately instruct, train, educate, and warn their officers that ECWs, particularly when repeatedly deployed for a prolonged period, combined with the use of O.C./chemical spray as well as significant physical restraint (including pressing on the prone body of a suspect and using rope to tie and bind) are capable of producing lethal injuries (See Exhibit "A");

r.  Failing at the institutional and policy level to provide appropriate medical training for their officers, including medical training that would allow their officers to recognize and/or treat the life threatening conditions incurred by Plaintiff-decedent as a result of ECW deployment, "drive stunning", exposure to an electrical current for an unreasonably dangerous duration and strength, being O.C./chemical sprayed, and being subjected to significant physical restraint methods (including being pressed upon when prone and being tied up with rope);

s.  Failing at the institutional and policy level to adequately supervise, instruct, train, and educate their officers to call for EMS personnel and/or provide EMS personnel with timely access to persons suffering from life-threatening conditions, including Plaintiff-decedent; and

t.  Failure to create, maintain, disseminate, promulgate, update, revise, and enforce reasonable written and unwritten policies prohibiting unreasonable, malicious, and excessive use of force against persons by their officers.

96.     The above-referenced failures of the Law Enforcement Defendants proximately caused Plaintiff-decedent's death in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries and death.

97.     The actions of the Law Enforcement Defendants constitute willful and wanton misconduct in disregard of the rights, health, well-being and safety of Plaintiff-decedent and warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT VI
## PLAINTIFFS v. DEFENDANT TASER
## STRICT PRODUCTS LIABILITY

98.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

99.     Defendant Taser is in the business of manufacturing, designing, testing, assembling, marketing and selling ECWs, including the taser ECWs that were used on Plaintiff-decedent.

100.    The subject taser ECWs were defective and unreasonably dangerous when they were designed, manufactured, tested, assembled, marketed, distributed, and sold by Defendant Taser for reasons including but not limited to the following, all of which are applicable when the tasers are being deployed and when the tasers are being utilized in "Drive Stun Mode":

> a.     **The subject taser ECWs were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner which would kill or seriously injure the intended target, including Plaintiff-decedent;**

b.   The subject taser ECWs were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that would subject the intended target, including Plaintiff-decedent, to an increased and unreasonable risk of death or serious bodily injury;

c.   The subject taser ECWs were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that permitted an unreasonably strong level of electrical shock to be delivered to an intended target, including Plaintiff-decedent;

d.   The subject taser ECWs were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that permitted an unreasonable duration of electrical shock to be delivered to an intended target, including Plaintiff-decedent;

e.   The subject taser ECWs were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that did not adequately convey, instruct, or warn users, including law enforcement personnel, of the serious health risks associated with multiple taser deployment;

f.   The subject taser ECWs were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that did not adequately convey, instruct, or warn users, including law enforcement personnel, of the serious health risks associated with a prolonged exposure and/or a significant aggregate exposure to an electrical current;

g.   The subject taser ECWs were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that failed to provide adequate and reasonable training instructions and warnings to users, including law enforcement personnel, regarding the proper and safe use of the tasers; and

h.   The subject taser ECWs were defective and unreasonably dangerous because they failed to meet all applicable and reasonable safety standards including but not limited to Defendant Taser's internal standards and other reasonable industry standards.

101.   On or about November 6, 2010, the subject tasers ECWs and all of their

26

respective component parts, were substantially unchanged from their original respective conditions, when initially sold and distributed by Defendant Taser.

102.   For the reasons set forth above, the subject tasers were unreasonably dangerous to members of the public generally, and to Plaintiff-decedent specifically.

103.   The defect(s) described above directly and proximately caused Plaintiff-decedent's injuries and death, in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries and eventual death.

104.   The actions of Defendant Taser as set forth above constitute willful and wanton misconduct in disregard of the rights and safety of Plaintiff-death, and warrant the imposition of punitive damages against Defendant Taser.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT VII
## PLAINTIFFS v. DEFENDANT TASER
## NEGLIGENCE

105.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

106.   Defendant Taser knew or in the exercise of due care should have known that the subject taser ECWs would be used without inspection in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to members of the public generally, and to Plaintiff-decedent specifically.

107.   Defendant Taser was under a duty to properly and adequately design,

manufacture, assemble, test, inspect, label, provide adequate warnings for, package, distribute, instruct/train law enforcement personnel about, and/or sell the subject taser ECWs in a reasonably safe condition so as not to present a danger to members of the general public, including but not limited to Plaintiff-decedent, who foreseeably would come into contact with the subject taser ECWs.

108.    Defendant Taser breached their duty by negligently designing, manufacturing, assembling, testing, inspecting, labeling, packaging, failing to warn, marketing, distributing, instructing/training law enforcement personnel about, and/or selling the subject taser ECWs when such products were not in reasonably safe condition for foreseeable use for reasons including, but not limited to the following:

   a.    **Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would not kill or seriously injure the intended target, including Plaintiff-decedent;**

   b.    **Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would not subject the intended target, including Plaintiff-decedent, to an increased and unreasonable risk of death or serious bodily injury;**

   c.    **Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would not permit an unreasonably strong level of electrical shock to be delivered to an intended target, including Plaintiff-decedent;**

   d.    **Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would not permit an unreasonable duration of electrical shock to be delivered to an intended target, including Plaintiff-decedent;**

   e.    **Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the**

subject tasers in a manner that adequately conveyed, instructed, and/or warned users, including law enforcement personnel, of the serious health risks associated with multiple taser deployment;

f.  Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that adequately conveyed, instructed, and/or warned users, including law enforcement personnel, of the serious health risks associated with a prolonged exposure and/or a significant aggregate exposure to an electrical current;

g.  Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that provided adequate and reasonable training instructions and warnings to users, including law enforcement personnel, regarding the proper and safe use of the tasers; and

h.  Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that met all applicable and reasonable safety standards including but not limited to Defendant Taser's internal standards and other reasonable industry standards.

109.   The negligence described above directly and proximately caused Plaintiff-decedent's catastrophic injuries and death, in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries and caused his death.

110.   The actions of Defendant Taser, as set forth above, constitute willful and wanton misconduct in disregard of the rights and safety of Plaintiff-decedent, and warrant the imposition of punitive damages against Defendant Taser.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT VIII
### PLAINTIFFS v. THE LAW ENFORCEMENT DEFENDANTS & DEFENDANT TASER
### WRONGFUL DEATH

111.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

112.    Plaintiffs are the legal representatives of the Estate of Robert Neill.

113.    Plaintiffs bring this action pursuant to 42 Pa. C.S.A. § 8301 and Pennsylvania Rule of Civil Procedure 2202 and claims all benefits of the Wrongful Death Act on behalf of themselves, and all other persons entitled to recover under the law; specifically, Plaintiff-decedent's other surviving daughter, Eva Neill.

114.    By reason of the death of Robert Neill, his Administrators and/or his appropriate beneficiaries have suffered pecuniary losses as well as funeral expenses and expenses of administration necessitated by reason of the injuries which caused the death of Robert Neill.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT IX
### PLAINTIFFS v. THE LAW ENFORCEMENT DEFENDANTS & DEFENDANT TASER
### SURVIVAL

115.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

116.    Plaintiffs bring this action on behalf of the Estate of Robert Neill, pursuant to 42 Pa. C.S.A. § 8302  and claim all benefits of the Survival Act on behalf of themselves and all other persons entitled to recover under the law; specifically, Plaintiff-decedent's other surviving

daughter, Eva Neill.

117.    Plaintiffs claim, on behalf of Plaintiff-decedent, all damages suffered by Plaintiff-decedent's estate, including, but not limited to, the great conscious pain and suffering sustained by Plaintiff-decedent, as well as the loss of past and future earnings and earning capacity suffered from November 6, 2010 onwards.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.

BY:_____
       Stewart J. Eisenberg, Esquire
       Daniel Jeck, Esquire
       Daniel J. Sherry Jr., Esquire
       Attorneys for Plaintiffs

DATED: 9/6/12

31