# EXHIBIT "A"

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Nicole Neill and Robert Neill, both individually and as Co-Administrators of the Estate of Robert Neill, Deceased | Mt. Joy Borough |

| (b) County of Residence of First Listed Plaintiff **Dauphin** | County of Residence of First Listed Defendant **Lancaster** |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §1983; 28 U.S.C. §1331 and 28 U.S.C. §1367(a).

Brief description of cause:
1983 action against regional police departments and products liability action against an ECW manufacturer

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ in excess of $75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE 06/13/2012

SIGNATURE OF ATTORNEY OF RECORD   Stewart J. Eisenberg

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NICOLE NEILL and ROBERT NEILL,       :
both INDIVIDUALLY and as             :
as CO-ADMINISTRATORS OF THE          :
ESTATE OF ROBERT NEILL,              :
DECEASED                             :
10 S 17th St                         :
Harrisburg, PA 17104-1377            :
                                     :
            Plaintiffs               :
      v.                             :
                                     :
MT. JOY BOROUGH                      :
21 East Main Street                  :
Mount Joy, PA 17552                  :
      and                            :
MOUNT JOY POLICE DEPARTMENT          :
21 East Main Street                  :
Mount Joy, PA 17552                  :
      and                            :
JOHN AND/OR JANE DOES (1-20)         :
MT. JOY RESPONDING POLICE            :
   OFFICERS                          :
      and                            :
JOHN AND/OR JANE DOES (1-20)         :
MT. JOY SUPERVISING POLICE           :
OFFICERS                             :
      and                            :
SUSQUEHANNA REGIONAL                 :
POLICE DEPARTMENT                    :
188 Rock Point Road                  :
Marietta, PA 17547                   :
      and                            :
JOHN AND/OR JANE DOES (1-20)         :
SUSQUEHANNA REGIONAL                 :
RESPONDING POLICE                    :
OFFICERS                             :
      and                            :
JOHN AND/OR JANE DOES (1-20)         :
SUSQUEHANNA REGIONAL                 :
SUPERVISING POLICE OFFICERS          :
      and                            :

PENNSYLVANIA STATE POLICE          :
DEPARTMENT                         :
21 Springhouse Road                :
Ephrata, PA 17522                  :
    and        :
JOHN AND/OR JANE DOES (1-20)       :
PENNSYLVANIA STATE                 :
RESPONDING POLICE                  :
OFFICERS                           :
    and        :
JOHN AND/OR JANE DOES (1-20)       :
PENNSYLVANIA STATE                 :
SUPERVISING POLICE OFFICERS        :
    and        :
NORTHWEST LANCASTER COUNTY :
REGIONAL POLICE DEPARTMENT         :
155 Merts Drive                    :
Elizabethtown, PA 17022            :
    and        :
JOHN AND/OR JANE DOES (1-20)       :
NORTHWEST LANCASTER COUNTY :
REGIONAL RESPONDING POLICE         :
OFFICERS                           :
    and        :
JOHN AND/OR JANE DOES (1-20)       :
NORTHWEST LANCASTER COUNTY :
REGIONAL SUPERVISING POLICE        :
OFFICERS                           :
    and        :
TASER INTERNATIONAL, INC.          :
17800 N. 85th St.                  :
Scottsdale, AZ 85255-6311 USA      :
                                   :
    **Defendants**   :

## CIVIL ACTION COMPLAINT

Plaintiffs Nicole Neill and Robert Neill, both Individually and as Co-Administrators of the Estate of Robert A. Neill, Deceased, by and through their attorneys, file suit against the above-captioned defendants, and in support thereof, state as follows:

2

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action against the Defendants pursuant to 42 U.S.C. §1983 as well as 28 U.S.C. §1331.  This Court has jurisdiction over the pendant state law tort claims pursuant to 28 U.S.C. §1367(a).

2.      Venue is properly vested in this Court because Plaintiff-decedent and the Defendants are residents of the Eastern District of Pennsylvania, the acts complained of occurred within the jurisdiction of the Eastern District of Pennsylvania (specifically, Lancaster County), and the defendant product-manufacturer (Taser International, Inc.) conducts regular and significant business within the Eastern District of Pennsylvania.

## PARTIES

3.      Plaintiffs, Nicole Neill and Robert E. Neill (hereinafter collectively referred to as "Plaintiffs") as the duly-appointed Co-Administrators of the Estate of Robert A. Neill (hereinafter referred to as "Plaintiff-decedent") are adult citizens and residents of the Commonwealth of Pennsylvania, and are the surviving children of Plaintiff-decedent.

4.      At all times relevant hereto, Plaintiff-decedent resided at 3 E. Haverestview South, in Mount Joy, PA.

5.      At all times relevant hereto, Plaintiff-decedent, a Vietnam War veteran, suffered from mental and emotional illnesses and disabilities, including seizure disorder, schizophrenia, bipolar disorder, and post traumatic stress disorder (PTSD). Upon information and belief, Plaintiff-decedent's mental and emotional health was known to all or some of the police departments and police officers identified, or in the process of being identified as defendants to this litigation, prior to November 6, 2010.

3

6.     On December 17, 2010, Letters of Administration were issued by the Register of Wills of Lancaster County for Plaintiffs to act as co-administrators for the Estate of Plaintiff-decedent.

7.     Defendant Mt. Joy Borough is a borough in the Commonwealth of Pennsylvania, organized as such under the laws of the Commonwealth, and has designated offices located at 21 East Main Street, Mount Joy, PA 17552, and at all relevant times hereto acted by and through its agents, servants and/or employees.  It is responsible for the policies, procedures, practices and customs created, promulgated, implemented and enforced at the Mt. Joy Police Department, through its various agencies, agents, departments, representatives, officials, and/or employees.

8.     Defendant Mt. Joy Police Department is a police department in the Commonwealth of Pennsylvania, duly organized as such under the laws of the Commonwealth, and has offices located at 21 East Main Street, Mt. Joy, PA 17552.  At all relevant times hereto, Defendant Mt. Joy Police Department acted by and through its agents, servants and/or employees.  It is responsible for the policies, procedures, practices and customs created, promulgated, implemented and enforced at the Mt. Joy Police Department, through its various agencies, agents, departments, representatives, officials, and/or employees.

9.     Defendants John and/or Jane Does (1-20) Mt. Joy Responding Police Officers are individuals who were, at all relevant times hereto, responding Police Officers of the Mt. Joy Police Department, operating in the course and scope of their employment, and under the color and guise of the laws of the Commonwealth of Pennsylvania.  The specific identity of these defendants are presently unknown to Plaintiffs, but upon positive identification will be properly served with process, and their individual names will added to this Complaint in accordance with the applicable

federal rules. These Defendants will presently be referred to as John and/or Jane Does (1-20) Mt. Joy

Responding Police Officers, all of whom were physically present at the November 6, 2010 incident

described in this Complaint.

10.     Defendants John and/or Jane Does (1-20) Mt. Joy Supervising Police Officers are

individuals who were, at all relevant times hereto, supervising Mt. Joy Police Officers, operating

in the course and scope of their employment, and under the color and guise of the laws of the

Commonwealth of Pennsylvania.   The specific identity of these defendants are presently unknown

to Plaintiffs, but upon positive identification will be properly served with process, and their

individual names will added to this Complaint in accordance with the applicable federal rules. These

Defendants will presently be referred to as John and/or Jane Does (1-20) Mt. Joy Supervising Police

Officers, all of whom had responsibility for the creation, promulgation, implementation and/or

enforcement of polices, procedures, practices and customs in the Mt. Joy Police Department

including, but not limited to, such policies, procedures, practices and customs that relate to electronic

control weapons (including tasers), use of pepper/chemical spray, physical restraint of suspects,

conflict resolution, force continuum, and first aid.   These individuals may have been physically

present at Plaintiff-decedent's residence on November 6, 2010, and/or may have participated

remotely.

11.     Defendant Susquehanna Regional Police Department is a police department in the

Commonwealth of Pennsylvania, duly organized as such under the laws of the Commonwealth, and

has offices located at 188 Rock Point Road, Marietta, PA 17547.   At all relevant times hereto,

Defendant Susquehanna Regional Police Department acted by and through its agents, servants and/or

employees.   It is responsible for the policies, procedures, practices and customs created,

5

promulgated, implemented and enforced by the Susquehanna Regional Police Department, through its various agencies, agents, departments, representatives, officials, and/or employees.

12.     Defendants John and/or Jane Does (1-20) Susquehanna Regional Responding Police Officers are individuals who were, at all relevant times hereto, responding Police Officers of the Susquehanna Regional Police Department, operating in the course and scope of their employment, and under the color and guise of the laws of the Commonwealth of Pennsylvania. The specific identity of these defendants are presently unknown to Plaintiffs, but upon positive identification will be properly served with process, and their individual names will added to this Complaint in accordance with the applicable federal rules. These Defendants will presently be referred to as John and/or Jane Does (1-20) Susquehanna Regional Responding Police Officers, all of whom were physically present at the November 6, 2010 incident described in this Complaint.

13.     Defendants John and/or Jane Does (1-20) Susquehanna Regional Supervising Police Officers are individuals who were, at all relevant times hereto, supervising Susquehanna Regional Police Officers, operating in the course and scope of their employment, and under the color and guise of the laws of the Commonwealth of Pennsylvania. The specific identity of these defendants are presently unknown to Plaintiffs, but upon positive identification will be properly served with process, and their individual names will added to this Complaint in accordance with the applicable federal rules. These Defendants will presently be referred to as John and/or Jane Does (1-20) Susquehanna Regional Supervising Police Officers, all of whom had responsibility for the creation, promulgation, implementation and/or enforcement of polices, procedures, practices and customs in the Susquehanna Regional Police Department including, but not limited to, such policies, procedures, practices and customs that relate to electronic control weapons (including tasers), use

6

of pepper/chemical spray, physical restraint of suspects, conflict resolution, force continuum, and first aid.  These individuals may have been physically present at Plaintiff-decedent's residence on November 6, 2010, and/or may have participated remotely.

14.     Defendant Pennsylvania State Police is the official police department for the Commonwealth of Pennsylvania, duly organized as such under the laws of the Commonwealth, and has official barracks located at the address set forth in the Caption.  At all relevant times hereto, the Pennsylvania State Police acted by and through its agents, servants and/or employees.  It is responsible for the policies, procedures, practices and customs created, promulgated, implemented and enforced by the Pennsylvania State Police Department, through its various agencies, agents, departments, representatives, officials, and/or employees.

15.     Defendants John and/or Jane Does (1-20) Pennsylvania State Responding Police Officers are individuals who were, at all relevant times hereto, responding Police Officers of the Pennsylvania State Police, operating in the course and scope of their employment, and under the color and guise of the laws of the Commonwealth of Pennsylvania.  The specific identity of these defendants are presently unknown to Plaintiffs, but upon positive identification will be properly served with process, and their individual names will added to this Complaint in accordance with the applicable federal rules. These Defendants will presently be referred to as John and/or Jane Does (1-20) Pennsylvania State Responding Police Officers, all of whom were physically present at the November 6, 2010 incident described in this Complaint.

16.     Defendant John and/or Jane Does (1-20) Pennsylvania State Supervising Police Officers are individuals who were, at all relevant times hereto, supervising Pennsylvania State Police Officers, operating in the course and scope of their employment, and under the color and guise of

7

the laws of the Commonwealth of Pennsylvania.  The specific identity of these defendants are presently unknown to Plaintiffs, but upon positive identification will be properly served with process, and their individual names will added to this Complaint in accordance with the applicable federal rules. These Defendants will presently be referred to as John and/or Jane Does (1-20) Pennsylvania State Supervising Police Officers, all of whom had responsibility for the creation, promulgation, implementation and/or enforcement of polices, procedures, practices and customs in the Pennsylvania State Police Department including, but not limited to, such policies, procedures, practices and customs that relate to electronic control weapons (including tasers), use of pepper/chemical spray, physical restraint of suspects, conflict resolution, force continuum, and first aid.  These individuals may have been physically present at Plaintiff-decedent's residence on November 6, 2010, and/or may have participated remotely.

17.     Defendant Northwest Lancaster County Regional Police Department is a police department in the Commonwealth of Pennsylvania, duly organized as such under the laws of the Commonwealth, and has offices located at 155 Merts Drive in Elizabethtown.  At all relevant times hereto, Defendant Northwest Lancaster County Regional Police Department acted by and through its agents, servants and/or employees.  It is responsible for the policies, procedures, practices and customs created, promulgated, implemented and enforced by the Northwest Lancaster County Regional Police Department , through its various agencies, agents, departments, representatives, officials, and/or employees.

18.     Defendants John and/or Jane Does (1-20) Northwest Lancaster County Regional Responding Police Officers are individuals who were, at all relevant times hereto, responding Police Officers of the Northwest Lancaster County Regional Police Department, operating in the course and

scope of their employment, and under the color and guise of the laws of the Commonwealth of Pennsylvania. The specific identity of these defendants are presently unknown to Plaintiffs, but upon positive identification will be properly served with process, and their individual names will added to this Complaint in accordance with the applicable federal rules. These Defendants will presently be referred to as John and/or Jane Does (1-20) Northwest Lancaster County Regional Responding Police Officers, all of whom were physically present at the November 6, 2010 incident described in this Complaint.

19.     Defendants John and/or Jane Does (1-20) Northwest Lancaster County Regional Supervising Police Officers are individuals who were, at all relevant times hereto, supervising Northwest Lancaster County Regional Police Officers, operating in the course and scope of their employment, and under the color and guise of the laws of the Commonwealth of Pennsylvania.   The specific identity of these defendants are presently unknown to Plaintiffs, but upon positive identification will be properly served with process, and their individual names will added to this Complaint in accordance with the applicable federal rules. These Defendants will presently be referred to as John and/or Jane Does (1-20) Northwest Lancaster County Regional Supervising Police Officers, all of whom had responsibility for the creation, promulgation, implementation and/or enforcement of polices, procedures, practices and customs in the Northwest Lancaster County Regional Police Department including, but not limited to, such policies, procedures, practices and customs that relate to electronic control weapons (including tasers), use of pepper/chemical spray, physical restraint of suspects, conflict resolution, force continuum, and first aid.  These individuals may have been physically present at Plaintiff-decedent's residence on November 6, 2010, and/or may have participated remotely.

9

20.     Defendant Taser International, Inc. (hereinafter "Defendant Taser") is a corporation that designs, manufactured, distributes, and sells electronic control weapons ("ECWs"), including the tasers at issue in this case.  Upon information and belief, Defendant Taser provides training and training materials for ECWs, including the tasers at issue in this case.

## FACTUAL BACKGROUND

21.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

22.     Upon information and belief, on or about November 6, 2010, at approximately 4:00 a.m., Plaintiff-decedent placed a 911 phone call to request assistance at his residence.

23.     Upon information and belief, in response to Plaintiff-decedent's 911 phone call, or as a result of subsequent dispatches, John and/or Jane Does (1-20) Mt. Joy Responding Police Officers arrived at Plaintiff-decedent's residence.

24.     Upon information and belief, in response to Plaintiff-decedent's 911 phone call, or as a result of subsequent dispatches, John and/or Jane Does (1-20) Mt. Joy Supervising Police Officers arrived at Plaintiff-decedent's residence, and/or participated remotely.

25.     Upon information and belief, in response to Plaintiff-decedent's 911 phone call, or as a result of subsequent dispatches, John and/or Jane Does (1-20) Susquehanna Regional Responding Police Officers arrived at Plaintiff-decedent's residence.

26.     Upon information and belief, in response to Plaintiff-decedent's 911 phone call, or as a result of subsequent dispatches, John and/or Jane Does (1-20) Susquehanna Regional Supervising Police Officers arrived at Plaintiff-decedent's residence, and/or participated remotely.

27.     Upon information and belief, in response to Plaintiff-decedent's 911 phone call, or as a result of subsequent dispatches, John and/or Jane Does (1-20) Pennsylvania State Responding Police Officers arrived at Plaintiff-decedent's residence.

28.     Upon information and belief, in response to Plaintiff-decedent's 911 phone call, or as a result of subsequent dispatches, John and/or Jane Does (1-20) Pennsylvania State Supervising Police Officers arrived at Plaintiff-decedent's residence, and/or participated remotely.

29.     Upon information and belief, in response to Plaintiff-decedent's 911 phone call, or as a result of subsequent dispatches, John and/or Jane Does (1-20) Northwest Lancaster County Regional Responding Police Officers arrived at Plaintiff-decedent's residence.

30.     Upon information and belief, in response to Plaintiff-decedent's 911 phone call, or as a result of subsequent dispatches, John and/or Jane Does (1-20) Northwest Lancaster County Regional Supervising Police Officers arrived at Plaintiff-decedent's residence, and/or participated remotely.

31.     Upon information and belief, Plaintiff-decedent, at all material times during the incidences more particularly described herein, did not act and/or did not continue to act in a manner that presented a threat of serious injury or harm to the Responding Police Officers and/or Supervising Officers.

32.     Upon information and belief, Plaintiff-decedent was already demonstrating shortness of breath when the Responding Police Officers and/or Supervising Police Officers first arrived on scene.

33.     Upon information and belief, none of the Responding Police Officers and/or Supervising Police Officers requested, called, or otherwise considered a Crisis Intervention Team

11

("CIT") or any similar unit or backup personnel which possessed adequate training for interventions with a person suffering from a mental or emotional disability, or potentially suffering from a mental or emotional disability.

34.  Upon information and belief, all or some of the Responding Police Officers and/or Supervising Police Officers knew or should have known that Plaintiff-decedent was afflicted with mental and/or emotional disabilities.

35.  All of the Responding Police Officers and all of the Supervising Police Officers were under an obligation and duty to abide by applicable force continuums, including the use of electronic control weapons (including tasers), pepper/chemical spray, and physical restraint, so as to avoid serious and fatal injuries to all individuals seized or in the process of being seized, including Plaintiff-decedent.

36.  Upon information and belief John and/or Jane Does (1-20) Mt. Joy Responding Police Officers discharged taser ECWs one or multiple times, striking Plaintiff-decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

37.  Upon information and belief John and/or Jane Does (1-20) Susquehanna Regional Responding Police Officers discharged  taser ECWs one or multiple times, striking Plaintiff-decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

38.  Upon information and belief John and/or Jane Does (1-20) Pennsylvania State Responding Police Officers discharged  taser ECWs one or multiple times, striking Plaintiff-decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and

the significant circulatory and respiratory health problems associated therewith.

39.     Upon information and belief John and/or Jane Does (1-20) Northwest Lancaster
County Regional Responding Police Officers discharged taser ECWs one or multiple times, striking
Plaintiff-decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical
current and the significant circulatory and respiratory health problems associated therewith.

40.     Upon information and belief John and/or Jane Does (1-20) Mt. Joy Supervising Police
Officers ordered the dischargement of taser ECWs, allowed the dischargement of taser ECWs, or
personally discharged taser ECWs one or multiple times, striking Plaintiff-decedent, thereby
subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and the significant
circulatory and respiratory health problems associated therewith.

41.     Upon information and belief John and/or Jane Does (1-20) Susquehanna Regional
Supervising Police Officers ordered the dischargement of taser ECWs, allowed the dischargement
of taser ECWs, or personally discharged taser ECWs one or multiple times, striking Plaintiff-
decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and
the significant circulatory and respiratory health problems associated therewith.

42.     Upon information and belief John and/or Jane Does (1-20) Pennsylvania State
Supervising Police Officers ordered the dischargement of taser ECWs, allowed the dischargement
of taser ECWs, or personally discharged taser ECWs one or multiple times, striking Plaintiff-
decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and
the significant circulatory and respiratory health problems associated therewith.

43.     Upon information and belief John and/or Jane Does (1-20) Northwest Lancaster
County Regional Supervising Police Officers ordered the dischargement of taser ECWs, allowed the

13

dischargement of taser ECWs, or personally discharged taser ECWs one or multiple times, striking Plaintiff-decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

44.     Upon information and belief John and/or Jane Does (1-20) Mt. Joy Responding Police Officers utilized taser ECWs one or multiple times in "Drive Stun Mode" on Plaintiff-decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

45.     Upon information and belief John and/or Jane Does (1-20) Susquehanna Regional Responding Police Officers utilized taser ECWs one or multiple times in "Drive Stun Mode" on Plaintiff-decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

46.     Upon information and belief John and/or Jane Does (1-20) Pennsylvania State Responding Police Officers utilized taser ECWs one or multiple times in "Drive Stun Mode" on Plaintiff-decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

47.     Upon information and belief John and/or Jane Does (1-20) Northwest Lancaster County Regional Responding Police Officers utilized taser ECWs one or multiple times in "Drive Stun Mode" on Plaintiff-decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

48.     Upon information and belief John and/or Jane Does (1-20) Mt. Joy Supervising Police Officers ordered the utilization of taser ECWs in "Drive Stun Mode", allowed the utilization of taser

ECWs in "Drive Stun Mode", or personally utilized taser ECWs in "Drive Stun Mode" one or multiple times on Plaintiff-decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

49.     Upon information and belief John and/or Jane Does (1-20) Susquehanna Regional Supervising Police Officers ordered the utilization of taser ECWs in "Drive Stun Mode", allowed the utilization of taser ECWs in "Drive Stun Mode", or personally utilized taser ECWs in "Drive Stun Mode" one or multiple times on Plaintiff-decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

50.     Upon information and belief John and/or Jane Does (1-20) Pennsylvania State Supervising Police Officers ordered the utilization of taser ECWs in "Drive Stun Mode", allowed the utilization of taser ECWs in "Drive Stun Mode", or personally utilized taser ECWs in "Drive Stun Mode" one or multiple times on Plaintiff-decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

51.     Upon information and belief John and/or Jane Does (1-20) Northwest Lancaster County Regional Supervising Police Officers ordered the utilization of taser ECWs in "Drive Stun Mode", allowed the utilization of taser ECWs in "Drive Stun Mode", or personally utilized taser ECWs in "Drive Stun Mode" one or multiple times on Plaintiff-decedent, thereby subjecting Plaintiff-decedent to an unreasonably dangerous electrical current and the significant circulatory and respiratory health problems associated therewith.

15

52.     Upon information and belief John and/or Jane Does (1-20) Mt. Joy Responding Police Officers discharged pepper/chemical spray one or multiple times, striking Plaintiff-decedent in the face, thereby causing Plaintiff-decedent to suffer enhanced and unreasonably dangerous respiratory strain and distress.

53.     Upon information and belief John and/or Jane Does (1-20) Susquehanna Regional Responding Police Officers discharged pepper/chemical spray one or multiple times, striking Plaintiff-decedent in the face, thereby causing Plaintiff-decedent to suffer enhanced and unreasonably dangerous respiratory strain and distress.

54.     Upon information and belief John and/or Jane Does (1-20) Pennsylvania State Responding Police Officers discharged pepper/chemical spray one or multiple times, striking Plaintiff-decedent in the face, thereby causing Plaintiff-decedent to suffer enhanced and unreasonably dangerous respiratory strain and distress.

55.     Upon information and belief John and/or Jane Does (1-20) Northwest Lancaster County Regional Responding Police Officers discharged pepper/chemical spray one or multiple times, striking Plaintiff-decedent in the face, thereby causing Plaintiff-decedent to suffer enhanced and unreasonably dangerous respiratory strain and distress.

56.     Upon information and belief John and/or Jane Does (1-20) Mt. Joy Supervising Police Officers ordered the dischargement of pepper/chemical spray, allowed the dischargement of pepper/chemical spray, or personally discharged pepper/chemical spray one or multiple times, striking Plaintiff-decedent in the face, thereby causing Plaintiff-decedent to suffer enhanced and unreasonably dangerous respiratory strain and distress.

57.     Upon information and belief John and/or Jane Does (1-20) Susquehanna Regional

Supervising Police Officers ordered the dischargement of pepper/chemical spray, allowed the dischargement of pepper/chemical spray, or personally discharged pepper/chemical spray one or multiple times, striking Plaintiff-decedent in the face, thereby causing Plaintiff-decedent to suffer enhanced and unreasonably dangerous respiratory strain and distress.

58.    Upon information and belief John and/or Jane Does (1-20) Pennsylvania State Supervising Police Officers ordered the dischargement of pepper/chemical spray, allowed the dischargement of pepper/chemical spray, or personally discharged pepper/chemical spray one or multiple times, striking Plaintiff-decedent in the face, thereby causing Plaintiff-decedent to suffer enhanced and unreasonably dangerous respiratory strain and distress.

59.    Upon information and belief John and/or Jane Does (1-20) Northwest Lancaster County Regional Supervising Police Officers ordered the dischargement of pepper/chemical spray, allowed the dischargement of pepper/chemical spray, or personally discharged pepper/chemical spray one or multiple times, striking Plaintiff-decedent in the face, thereby causing Plaintiff-decedent to suffer enhanced and unreasonably dangerous respiratory strain and distress.

60.    Upon information and belief John and/or Jane Does (1-20) Mt. Joy Responding Police Officers utilized significant and unreasonably dangerous physical restraint techniques upon Plaintiff-decedent, including the use of rope to bind Plaintiff-decedent, causing Plaintiff-decedent to sustain significant head and bodily injuries, including but not limited to multiple rib fractures, thereby enhancing Plaintiff-decedent's respiratory and circulatory strain and distress.

61.    Upon information and belief John and/or Jane Does (1-20) Susquehanna Regional Responding Police Officers utilized significant and unreasonably dangerous physical restraint techniques upon Plaintiff-decedent, including the use of rope to bind Plaintiff-decedent, causing

17

Plaintiff-decedent to sustain significant head and bodily injuries, including but not limited to multiple rib fractures, thereby enhancing Plaintiff-decedent's respiratory and circulatory strain and distress.

62.     Upon information and belief John and/or Jane Does (1-20) Pennsylvania State Responding Police Officers utilized significant and unreasonably dangerous physical restraint techniques upon Plaintiff-decedent, including the use of rope to bind Plaintiff-decedent, causing Plaintiff-decedent to sustain significant head and bodily injuries, including but not limited to multiple rib fractures, thereby enhancing Plaintiff-decedent's respiratory and circulatory strain and distress.

63.     Upon information and belief John and/or Jane Does (1-20) Northwest Lancaster County Regional Responding Police Officers utilized significant and unreasonably dangerous physical restraint techniques upon Plaintiff-decedent, including the use of rope to bind Plaintiff-decedent, causing Plaintiff-decedent to sustain significant head and bodily injuries, including but not limited to multiple rib fractures, thereby enhancing Plaintiff-decedent's respiratory and circulatory strain and distress.

64.     Upon information and belief John and/or Jane Does (1-20) Mt. Joy Supervising Police Officers ordered significant and unreasonably dangerous physical restraint techniques to be applied upon Plaintiff-decedent, including the use of rope to bind Plaintiff-decedent, allowed significant and unreasonably dangerous physical restraint techniques to be applied  upon Plaintiff-decedent, including the use of rope to bind Plaintiff-decedent, or personally applied significant and unreasonably dangerous physical restraint techniques upon Plaintiff-decedent, causing Plaintiff-decedent to sustain significant head and bodily injuries, including but not limited to multiple rib

18

fractures, thereby enhancing Plaintiff-decedent's respiratory and circulatory strain and distress.

65.   Upon information and belief John and/or Jane Does (1-20) Susquehanna Regional Supervising Police Officers ordered  significant and unreasonably dangerous physical restraint techniques to be applied  upon Plaintiff-decedent, including the use of rope to bind Plaintiff-decedent, allowed significant and unreasonably dangerous physical restraint techniques to be applied upon Plaintiff-decedent, or personally applied significant and unreasonably dangerous physical restraint techniques upon Plaintiff-decedent, causing Plaintiff-decedent to sustain significant head and bodily injuries, including but not limited to multiple rib fractures, thereby enhancing Plaintiff-decedent's respiratory and circulatory strain and distress.

66.   Upon information and belief John and/or Jane Does (1-20) Pennsylvania State Supervising Police Officers ordered significant and unreasonably dangerous physical restraint techniques to be applied upon Plaintiff-decedent, including the use of rope to bind Plaintiff-decedent, allowed significant and unreasonably dangerous physical restraint techniques to be applied upon Plaintiff-decedent,  or personally applied significant and unreasonably dangerous physical restraint techniques upon Plaintiff-decedent, causing Plaintiff-decedent to sustain significant head and bodily injuries, including but not limited to multiple rib fractures, thereby enhancing Plaintiff-decedent's respiratory and circulatory strain and distress.

67.   Upon information and belief John and/or Jane Does (1-20) Northwest Lancaster County Regional Supervising Police Officers ordered significant and unreasonably dangerous physical restraint techniques to be applied  upon Plaintiff-decedent, including the use of rope to bind Plaintiff-decedent, allowed significant and unreasonably dangerous physical restraint techniques to be applied  upon Plaintiff-decedent, or personally applied significant and unreasonably dangerous

physical restraint techniques upon Plaintiff-decedent, causing Plaintiff-decedent to sustain significant head and bodily injuries, including but not limited to multiple rib fractures, thereby enhancing Plaintiff-decedent's respiratory and circulatory strain and distress.

68.    Upon information and belief John and/or Jane Does (1-20) Mt. Joy Responding Police Officers did not provide any material or timely first aid to Plaintiff-decedent, following their application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

69.    Upon information and belief John and/or Jane Does (1-20) Susquehanna Regional Responding Police Officers did not provide any material or timely first aid to Plaintiff-decedent, following their application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

70.    Upon information and belief John and/or Jane Does (1-20) Pennsylvania State Responding Police Officers did not provide any material or timely first aid to Plaintiff-decedent, following their application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

71.    Upon information and belief John and/or Jane Does (1-20) Northwest Lancaster County Regional Responding Police Officers did not provide any material or timely first aid to Plaintiff-decedent, following their application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

72.    Upon information and belief John and/or Jane Does (1-20) Mt. Joy Supervising Police Officers did not order that material and timely first aid be provided to Plaintiff-decedent

following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, did not allow material and timely first aid to be provided to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, and did not personally provide material and timely first aid to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

73.   Upon information and belief John and/or Jane Does (1-20) Susquehanna Supervising Police Officers did not order that material and timely first aid be provided to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, did not allow material and timely first aid to be provided to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, and did not personally provide material and timely first aid to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

74.   Upon information and belief John and/or Jane Does (1-20) Pennsylvania State Supervising Police Officers did not order that material and timely first aid be provided to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, did not allow material and timely first aid to be provided to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, and did not personally provide material and timely first aid to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

75.     Upon information and belief John and/or Jane Does (1-20) Northwest Lancaster County Regional Supervising Police Officers did not order that material and timely first aid be provided to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, did not allow material and timely first aid to be provided to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, and did not personally provide material and timely first aid to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

76.     Upon information and belief John and/or Jane Does (1-20) Mt. Joy Responding Police Officers did not permit responding EMS personnel to provide any necessary, material or timely first aid to Plaintiff-decedent, following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

77.     Upon information and belief John and/or Jane Does (1-20) Susquehanna Regional Responding Police Officers did not permit responding EMS personnel to provide any necessary, material or timely first aid to Plaintiff-decedent, following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

78.     Upon information and belief John and/or Jane Does (1-20) Pennsylvania State Responding Police Officers did not permit responding EMS personnel to provide any necessary, material or timely first aid to Plaintiff-decedent, following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably

22

reducing the likelihood of survival.

79.     Upon information and belief John and/or Jane Does (1-20) Northwest Lancaster County Regional Responding Police Officers did not permit responding EMS personnel to provide any necessary, material or timely first aid to Plaintiff-decedent, following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

80.     Upon information and belief John and/or Jane Does (1-20) Mt. Joy Supervising Police Officers did not order responding EMS personnel to provide necessary, material and timely first aid to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, and did not allow responding EMS personnel to administer necessary, material and timely first aid to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

81.     Upon information and belief John and/or Jane Does (1-20) Susquehanna Regional Supervising Police Officers did not order responding EMS personnel to provide necessary, material and timely first aid to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, and did not allow responding EMS personnel to administer necessary, material and timely first aid to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

82.     Upon information and belief John and/or Jane Does (1-20) Pennsylvania State Supervising Police Officers did not order responding EMS personnel to provide necessary, material

23

and timely first aid to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, and did not allow responding EMS personnel to administer necessary, material and timely first aid to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

83.    Upon information and belief John and/or Jane Does (1-20) Northwest Lancaster County Regional Supervising Police Officers did not order responding EMS personnel to provide necessary, material and timely first aid to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, and did not allow responding EMS personnel to administer necessary, material and timely first aid to Plaintiff-decedent following the application of ECWs, pepper/chemical spray, and/or significant physical restraint techniques, thereby significantly and unreasonably reducing the likelihood of survival.

84.    Following a significant passage of time after the administration of ECWs, pepper/chemical spray, and significant physical restraint techniques, Plaintiff-decedent was loaded into an ambulance. Upon information and belief, while in the ambulance, Plaintiff-decedent ceased having a pulse, and coded at 5:18 a.m. on November 6, 2010.

85.    Plaintiff-decedent's cause of death was ruled by the investigating forensic pathologist to be "cardiac dysrhythmia".

86.    The conduct of Defendants Mt. Joy Borough, Mt. Joy Borough Police Department, John and/or Jane Does (1-20) Mt. Joy Responding Police Officers,  John and/or Jane Does (1-20) Mt. Joy Supervising Police Officers, Susquehanna Regional Police Department, John and/or Jane Does (1-20) Susquehanna Regional Responding Police Officers, John and/or Jane Does (1-20)

24

Susquehanna Regional Supervising Police Officers, Pennsylvania State Police, John and/or Jane Does (1-20) Pennsylvania State Responding Police Officers, John and/or Jane Does (1-20) Pennsylvania State Supervising Police Officers, John and/or Jane Does (1-20) Northwest Lancaster County Regional Responding Police Officers, and John and/or Jane Does (1-20) Northwest Lancaster County Regional Supervising Police Officers (hereinafter collectively referred to as "The Law Enforcement Defendants") as set forth above and herein, violated Plaintiff-decedent's constitutional as guaranteed by the United States Constitution, and as remediable pursuant to 42 U.S.C. §1983.

87.    At all times relevant hereto, the Law Enforcement Defendants acted under the color and guise of state and local laws.

88.    The conduct of the Law Enforcement Defendants as set forth above and herein, acting under the color and guise of state and local law, was recklessly and deliberately indifferent to the safety, bodily integrity, well-being, and life of Plaintiff-decedent, and was committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to Plaintiff-decedent, and was so egregious as to shock the conscience.

89.    Upon information and belief, Plaintiff-decedent was in the custody of the Law Enforcement Defendants, or was in the process of being placed into custody, thereby creating a special relationship between the Law Enforcement Defendants and Plaintiff-decedent. As such, the Law Enforcement Defendants were entrusted with and responsible for Plaintiff-decedent's protection, safety, well being and life while he was within (or was in the process of being placed in) their custody, and the Law Enforcement Defendants were, likewise, required to, provide reasonable, appropriate and timely medical care and treatment to Plaintiff-decedent.

25

90.     As a direct and proximate result of the Law Enforcement Defendants' conduct, as described above and herein, Plaintiff-decedent was caused to suffer grievous physical injuries, significant conscious pain and suffering, and an agonizing death.

91.     The proximate conduct of the Law Enforcement Defendants, as described above and herein, was undertaken in bad faith and with malice, bad motive, evil intent and deliberate and/or reckless indifference to and callous disregard for Plaintiff-decedent's constitutional rights to be free from physical assault causing grievous injuries, harm and death under the Fourteenth Amendment to the United States Constitution, as well as Plaintiff-decedent's right to appropriate and timely medical care as a result of being in (or in the process of being placed in) the custody of the Law Enforcement Defendants.

92.     Upon information and belief, all ECWs utilized on Plaintiff-decedent were designed, manufactured, tested, marketed, distributed, and sold by Defendant Taser.

## COUNT I
## PLAINTIFFS v. THE LAW ENFORCEMENT DEFENDANTS
## USE OF UNREASONABLE, MALICIOUS AND/OR EXCESSIVE FORCE

93.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

94.     Upon information and belief, on November 6, 2010, the Law Enforcement Defendants, despite being aware that Plaintiff-decedent was already short of breath and suffered from mental and emotional disabilities, utilized unreasonable, malicious, and/or excessive and unreasonably dangerous force on Plaintiff-decedent; specifically, the dischargement of multiple ECWs on Plaintiff-decedent, the utilization of one or more ECWs in "Drive Stun Mode" on Plaintiff-decedent, the dischargement of pepper/chemical spray directly into Plaintiff-decedent's

face, and the utilization of significant and unreasonably dangerous restraint techniques upon Plaintiff-decedent, including but not limited to the use of rope to bind Plaintiff-decedent, which caused serious bodily injury including, but not limited to, broken ribs.

95.     Plaintiff-decedent had a fundamental and well-established right to be secure in his person and a right not be subjected to unreasonable force pursuant to the Fourth Amendment and Fourteenth Amendment of the United States Constitution.

96.     Plaintiff-decedent had a fundamental and well-established right to be secure in his person and a right not to be subjected to malicious force pursuant to the Eighth Amendment of the United States Constitution.

97.     Plaintiff-decedent had a fundamental and well-established right to be secure in his person and a right not to be subjected to excessive force pursuant to the Fourth and Fourteenth Amendment of the United States Constitution.

98.     The force utilized by the Law Enforcement Defendants was unreasonable, malicious, excessive, unnecessary, dangerous, willful and wanton, and unconstitutional.

99.     The unreasonable, malicious, excessive, and dangerous force used by the Law Enforcement Defendants was grossly disproportionate to any need for use of force, was in violation of applicable force continuums, and was inspired by malice rather than careless or unwise zeal.

100.    The unreasonable, malicious, excessive, and dangerous force used by the Law Enforcement Defendants served no legitimate law enforcement objective.

101.    The unreasonable, malicious, excessive and dangerous force used by the Law Enforcement Defendants amounted to an abuse of official power and authority.

102.    The unreasonable, malicious, excessive and dangerous force used by the Law

Enforcement Defendants was so egregious as to shock the conscience.

103.   The unreasonable, malicious, excessive and dangerous force used by the Law Enforcement Defendants evidenced a deliberate indifference to the life, safety, well-being of Plaintiff-decedent.

104.   The unreasonable, malicious, excessive and dangerous force used by the Law Enforcement Defendants amounted to cruel and unusual punishment for Plaintiff-decedent.

105.   The unreasonable, malicious, excessive and dangerous forced used by the Law Enforcement Defendants came as a result of their unreasonable seizure of Plaintiff-decedent.

106.   The unreasonable, malicious, excessive and dangerous force used by the Law Enforcement Defendants violated the Due Process protections afforded to Plaintiff-decedent pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, and violated Plaintiff-decedent's Eighth Amendment rights which prohibit the imposition of cruel and unusual punishment.

107.   The Law Enforcement Defendants' use of unreasonable, malicious, excessive and dangerous force on Plaintiff-decedent proximately caused his death in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries and death.

108.   The actions of the Law Enforcement Defendants constitute willful and wanton misconduct in disregard of the rights, health, well-being and safety of Plaintiff-decedent and warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other

relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT II
### PLAINTIFFS v. THE LAW ENFORCEMENT DEFENDANTS
### FAILURE TO CREATE, ADOPT, PROMULGATE,
### IMPLEMENT, REVISE, UPDATE, UTILIZE, AND/OR ENFORCE
### APPROPRIATE PROCEDURES, POLICIES AND PROTOCOLS

109.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

110.    Upon information and belief, on or about November 6, 2010, the Law Enforcement Defendants used excessive and unreasonably dangerous force on Plaintiff-decedent, including while Plaintiff-decedent was in their custody, or was in the process of being placed in their custody.

111.    On and prior to November 6, 2010, the Law Enforcement Defendants knew or should have known that prolonged electrical dischargement from an ECW, or the aggregate effect of multiple electrical dischargements from multiple ECWs, creates an unreasonably high risk of serious bodily injury or death, particularly if the recipient of the electrical dischargement is suffering from preexisting respiratory health problems, circulatory health problems, or mental/emotion health problems, all of which Plaintiff-decedent clearly was exhibiting.

112.    On and prior to November 6, 2010, the Law Enforcement Defendants knew or should have known that the act of using an ECW in "Drive Stun Mode", particularly when this act is accomplished in addition to prolonged electrical dischargement from an ECW, or the aggregate effect of multiple electrical dischargements from multiple ECWs, creates an unreasonably high risk of serious bodily injury or death, particularly if the recipient of these acts is suffering from pre-existing respiratory health problems, circulatory health problems, and/or mental/emotion health problems, as Plaintiff-decedent clearly was.

29

113.    On and prior to November 6, 2010, the Law Enforcement Defendants knew or should have known that the act of using pepper/chemical spray, in addition to "Drive Stunning" and prolonged electrical dischargement from an ECW, or the aggregate effect of multiple electrical dischargements from multiple ECWs, creates an unreasonably high risk of serious bodily injury or death, particularly if the recipient of these acts is suffering from pre-existing respiratory health problems, circulatory health problems, and/or mental/emotion health problems, as Plaintiff-decedent clearly was.

114.    On and prior to November 6, 2010, the Law Enforcement Defendants knew or should have known that the act of using significant physical restraint methods (so pronounced that ribs were broken) as well as using rope to tie up an individual, in addition to using pepper/chemical spray, "Drive Stunning" and prolonged electrical dischargement from an ECW, or the aggregate effect of multiple electrical dischargements from multiple ECWs, creates an unreasonably high risk of serious bodily injury or death, particularly if the recipient of these acts is suffering from pre-existing respiratory health problems, circulatory health problems, and/or mental/emotion health problems, as Plaintiff-decedent clearly was.

115.    The Law Enforcement Defendants had a significant prior opportunity to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols to help protect Plaintiff-decedent from serious and foreseeable harm, including the serious risk of harm and death associated with exposure to a combination of multiple ECW electrical deployments, ECW drive stunning, the use of pepper/chemical spray, and the use of significant physical restraint methods (including the use of rope to tie up an individual), particularly when the individual who is the recipient of these methods is suffering from pre-existing respiratory health problems, circulatory

30

health problems, and/or mental/emotion health problems, as Plaintiff-decedent clearly was.

116.   The Law Enforcement Defendants intentionally, recklessly, and/or negligently failed to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols regarding the use of force, including but not limited to force continuums, use of ECWs, use of "Drive Stun Mode" with ECWs, use of pepper/chemical spray, and use of significant physical restraint methods (including the use of rope) and the combination thereof, including when the recipient of these forcible methods is suffering from pre-existing respiratory health problems, circulatory health problems, and/or mental/emotion health problems, as Plaintiff-decedent clearly was.

117.   Additionally, the Law Enforcement Defendants intentionally, recklessly, and/or negligently failed to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols regarding the timely application of first aid after the use of ECWs, the use of "Drive Stun Mode" with ECWs, the use of pepper/chemical spray, and the use of significant physical restraint methods (including the use of rope) and the combination thereof, including when the recipient of these forcible methods is suffering from pre-existing respiratory health problems, circulatory health problems, and/or mental/emotion health problems, as Plaintiff-decedent clearly was.

118.   The Law Enforcement Defendants' failure to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols, demonstrated a reckless indifference to the safety, health, well-being and life of Plaintiff-decedent.

119.   The Law Enforcement Defendants' failure to create, adopt, promulgate, implement, revise, update, utilize, and enforce policies, procedures, and/or protocols proximately caused

Plaintiff-decedent's death in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries and death.

120.    The actions of the Law Enforcement Defendants constitute willful and wanton misconduct in disregard of the rights, health, well-being and safety of Plaintiff-decedent and warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

**COUNT III**
**PLAINTIFFS v. THE LAW ENFORCEMENT DEFENDANTS**
**FAILURE TO PROVIDE TIMELY AND REASONABLE MEDICAL CARE**
**TO INDIVIDUALS THAT HAVE BEEN SEIZED, ARE IN THE PROCESS**
**OF BEING PLACED IN CUSTODY, AND/OR ARE IN CUSTODY**

121.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

122.    When Plaintiff-decedent was seized by the Law Enforcement Defendants, was in the process of being placed in custody by the Law Enforcement Defendants, and/or was in the custody of the Law Enforcement Defendants, a special relationship was created that, in turn, entitled Plaintiff-decedent to be reasonably provided with timely medical care, including access to reasonable emergency medical care and treatment for legitimate medical needs by the Law Enforcement Defendants.

123.    Following the imposition of unreasonable, malicious, excessive and unreasonably dangerous force by the Law Enforcement Defendants upon Plaintiff-decedent, it was, or should have been readily apparent and obvious to the Law Enforcement Defendants that Plaintiff-decedent

required immediate and urgent medical attention for the injuries he had sustained as a result of being energized by multiple ECWs, "drive stunned", subjected to an electrical current for an unreasonably dangerous duration and strength, pepper/chemical sprayed, and subjected to significant and unreasonably dangerous physical restraint methods, including being tied up with rope.

124.     Despite Plaintiff-decedent's obvious injuries and significant need for urgent medical assistance and treatment, the Law Enforcement Defendants intentionally, recklessly, and/or negligently denied and/or refused and/or failed to render appropriate and/or timely medical aid to Plaintiff-decedent and/or unreasonably prevented or delayed timely emergency medical assistance and treatment from EMS personnel.

125.     The Law Enforcement Defendants possessed neither the right nor the authority to disregard the medical needs of individuals seized, in the process of being placed in custody, and/or in their custody, including Plaintiff-decedent, particularly when the medical needs were emergent and obvious in nature.

126.     The Law Enforcement Defendants, in willfully, wantonly, and recklessly ignoring the obvious, urgent and serious medical needs of Plaintiff-decedent while he was in their custody and the substantial risk of serious injury and death, demonstrated deliberate indifference to Plaintiff-decedent.

127.     The Law Enforcement Defendants' intentional, reckless, and/or negligent denial and/or refusal and/or failure to render appropriate and/or timely medical aid to Plaintiff-decedent and/or unreasonable prevention or delay of timely emergency medical assistance from EMS personnel, proximately caused Plaintiff-decedent's death in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries

and death.

128.    The actions of the Law Enforcement Defendants constitute willful and wanton misconduct in disregard of the rights, health, well-being and safety of Plaintiff-decedent and warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT IV
## PLAINTIFFS v. THE LAW ENFORCEMENT DEFENDANTS
## STATE CREATED DANGER

129.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

130.    Despite the Law Enforcement Defendants' actual and/or constructive knowledge that Plaintiff-decedent was suffering from pre-existing respiratory problems, circulatory problems, and mental/emotional health problems, and despite their knowledge that death or serious injury could occur to Plaintiff-decedent as a result of being energized by multiple ECWs, "drive stunned", subjected to an electrical current for an unreasonably dangerous duration and strength, pepper/chemical sprayed, and subjected to significant and unreasonably dangerous physical restraint methods (including being tied up with rope) the Law Enforcement Defendants knowingly and intentionally subjected Plaintiff-decedent to the aforementioned acts.

131.    It was reasonably foreseeable to the Law Enforcement Defendants that Plaintiff-decedent would be seriously injured or killed by the combination of being energized by multiple ECWs, "drive stunned", subjected to an electrical current for an unreasonably dangerous duration

34

and strength, pepper/chemical sprayed, and subjected to significant and unreasonably dangerous physical restraint methods, including but not limited to being tied up with rope.

132.   The Law Enforcement Defendants affirmatively abused and/or misused their official authority which created an opportunity for danger to Plaintiff-decedent that did not otherwise exist, which came as a result of the Law Enforcement Defendants knowingly and/or intentionally energizing Plaintiff-decedent with multiple ECWs, "drive stunning" Plaintiff-decedent with one or more ECW, subjecting Plaintiff-decedent to an electrical current for an unreasonably dangerous duration and strength, pepper/chemical spraying Plaintiff-decedent, and subjecting Plaintiff-decedent to significant and unreasonably dangerous physical restraint methods (including being tied up with rope) even though the Law Enforcement Defendants knew or should have known that Plaintiff-decedent would sustain serious injury or die from these actions.

133.   The Law Enforcement Defendants' state-created dangers proximately caused Plaintiff-decedent's death in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries and death.

134.   The actions of the Law Enforcement Defendants constitute willful and wanton misconduct in disregard of the rights, health, well-being and safety of Plaintiff-decedent and warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT V
## PLAINTIFFS vs. THE LAW ENFORCEMENT DEFENDANTS
## FAILURE TO TRAIN AND SUPERVISE PERSONNEL

135.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

136.   Plaintiff-decedent had fundamental and well-established rights to be free from unreasonable, malicious, excessive and dangerous force by the Law Enforcement Defendants, and to not be denied access to medical care and treatment for legitimate medical needs once he was seized, in the process of being placed in custody, or in the custody of the Law Enforcement Defendants.

137.   The infliction of unreasonable, malicious, excessive and dangerous force upon Plaintiff-decedent by the Law Enforcement Defendants, and the Law Enforcement Defendant's subsequent failure to provide Plaintiff-decedent with adequate and timely medical care, violated Plaintiff-decedent's substantive rights guaranteed by the United State Constitution.

138.   The violations of Plaintiff-decedent's substantive constitutional rights, and his resulting catastrophic injuries and death, were caused by the Law Enforcement Defendants' failure to properly supervise, educate, instruct, train and/or control their personnel in general, as well as in the following specific respects:

      a.   Failing to adequately supervise, instruct, train, and educate their officers in regard to force continuums, and ensure that force continuums were properly implemented, enforced and followed, so as to expose members of the public, including Plaintiff-decedent, to the least possible level of force, including no force whatsoever;

      b.   Failing to adequately supervise, instruct, train, and educate their officers in regard to interactions with individuals suffering from mental and emotional health issues, including Plaintiff-decedent, so that proper communication can occur, and potentially violent confrontations can be

avoided, including, but not limited to, recognizing the need for a Crisis Intervention Team and requesting assistance therefrom;

c. Failing to adequately supervise, instruct, train, and educate their officers in the proper use of ECW deployment;

d. Failing to adequately supervise, instruct, train, and educate their officers in the proper use of ECW deployment in "Drive Stun Mode";

e. Failing to adequately supervise, instruct, train, and educate their officers regarding the increased risk of serious injury or death that accompanies a prolonged electrical shock administered by the ECW, including but not limited to aggregate duration when multiple ECWs are deployed;

f. Failing to adequately supervise, instruct, train, and educate their officers in the proper use of pepper/chemical spray, including when an ECW has additionally been deployed;

g. Failing to adequately supervise, instruct, train, and educate their officers in the proper use of significant physical restraint methods (including but not limited to the use of rope) including when an ECW and/or pepper/chemical spray has additionally been deployed;

h. Failing to adequately supervise, instruct, train, and educate their officers to recognize the signs of pre-existing respiratory distress and the resulting health ramifications associated with using ECWs, pepper/chemical spray, and significant physical restraint methods (including tying up with rope) on such persons;

i. Failing to adequately supervise, instruct, train, and educate their officers to recognize the signs of pre-existing circulatory distress and the resulting health ramifications associated with using ECWs, pepper/chemical spray, and significant physical restraint methods on such persons;

j. Failing to adequately supervise, instruct, train, and educate their officers to recognize the signs of pre-existing mental and/or emotional health disabilities, and the resulting health ramifications associated with using ECWs, pepper/chemical spray, and significant physical restraint methods on such persons;

k. Failing to adequately instruct, train, educate, and warn their officers that ECWs are capable of producing lethal injuries;

l.   Failing to adequately instruct, train, educate, and warn their officers that ECWs combined with the use of pepper/chemical spray, are capable of producing lethal injuries;

m.   Failing to adequately instruct, train, educate, and warn their officers that ECWs combined with the use of pepper/chemical spray and significant physical restraint (including the use of rope) are capable of producing lethal injuries;

n.   Failing to provide appropriate medical training for their officers, including medical training that would allow their officers to recognize and/or treat the life threatening conditions incurred by Plaintiff-decedent as a result of ECW deployment, "drive stunning", exposure to an electrical current for an unreasonably dangerous duration and strength, being pepper/chemical sprayed, and being subjected to significant physical restraint methods (including being tied up with rope);

o.   Failing to adequately supervise, instruct, train, and educate their officers to call for EMS personnel and/or provide EMS personnel with timely access to persons suffering from life-threatening conditions, including Plaintiff-decedent; and

p.   Failure to create, maintain, disseminate, promulgate, update, and enforce reasonable written and unwritten policies prohibiting unreasonable, malicious, and excessive use of force against persons by their officers.

139.   The above-referenced failures of the Law Enforcement Defendants proximately caused Plaintiff-decedent's death in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries and death.

140.   The actions of the Law Enforcement Defendants constitute willful and wanton misconduct in disregard of the rights, health, well-being and safety of Plaintiff-decedent and warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other

relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT VI
### PLAINTIFFS v. THE LAW ENFORCEMENT DEFENDANTS
### RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

141.    Plaintiffs incorporate by reference the above referenced paragraphs as if set forth fully herein.

142.    In committing the actions and/or inactions described above and herein, the individual police officers were acting, at all relevant times, within the course and scope of their employment for their respective police departments.

143.    Defendants Mt. Joy Borough, Mt. Joy Police Department, Susquehanna Regional Police Department, the Pennsylvania State Police, and the Northwest Lancaster County Regional Police Department are liable as principals for all torts committed by their respective agents and/or employees upon Plaintiff-decedent.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT VII
### PLAINTIFFS v. DEFENDANT TASER
### STRICT PRODUCTS LIABILITY

144.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

145.    Defendant Taser is in the business of manufacturing, designing, testing, assembling, marketing and selling ECWs, including the tasers that were used on Plaintiff-decedent.

146.   The subject tasers were defective and unreasonably dangerous when they were designed, manufactured, tested, assembled, marketed, distributed, and sold by Defendant Taser for reasons including but not limited to the following, all of which are applicable when the tasers are being deployed and when the tasers are being utilized in "Drive Stun Mode":

a.   The subject tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner which would kill or seriously injure the intended target, including Plaintiff-decedent;

b.   The subject tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that would subject the intended target, including Plaintiff-decedent, to an increased and unreasonable risk of death or serious bodily injury;

c.   The subject tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that permitted an unreasonably strong level of electrical shock to be delivered to an intended target, including Plaintiff-decedent;

d.   The subject tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that permitted an unreasonable duration of electrical shock to be delivered to an intended target, including Plaintiff-decedent;

e.   The subject tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that did not adequately convey, instruct, or warn users, including law enforcement personnel, of the serious health risks associated with multiple taser deployment;

f.   The subject tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that did not adequately convey, instruct, or warn users, including law enforcement personnel, of the serious health risks associated with a prolonged exposure and/or a significant aggregate exposure to an electrical current;

40

g.   The subject tasers were defective and unreasonably dangerous because they were designed, manufactured, tested, assembled, marketed, distributed and sold in a manner that failed to provide adequate and reasonable training instructions and warnings to users, including law enforcement personnel, regarding the proper and safe use of the tasers; and

h.   The subject tasers were defective and unreasonably dangerous because they failed to meet all applicable and reasonable safety standards including but not limited to Defendant Taser's internal standards and other reasonable industry standards.

147.   On or about November 6, 2010, the subject tasers and all of their respective component parts, were substantially unchanged from their original respective conditions, when initially sold and distributed by Defendant Taser.

148.   For the reasons set forth above, the subject tasers were unreasonably dangerous to members of the public generally, and to Plaintiff-decedent specifically.

149.   The defect(s) described above directly and proximately caused Plaintiff-decedent's injuries and death, in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries and eventual death.

150.   The actions of Defendant Taser as set forth above constitute willful and wanton misconduct in disregard of the rights and safety of Plaintiff-death, and warrant the imposition of punitive damages against Defendant Taser.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT VIII
### PLAINTIFFS v. DEFENDANT TASER
### NEGLIGENCE

151.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

152.    Defendant Taser knew or in the exercise of due care should have known that the subject tasers would be used without inspection in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to members of the public generally, and to Plaintiff-decedent specifically.

153.    Defendant Taser was under a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, package, distribute, instruct/train law enforcement personnel about, and/or sell the subject tasers in a reasonably safe condition so as not to present a danger to members of the general public, including but not limited to Plaintiff-decedent, who foreseeably would come into contact with the subject tasers.

154.    Defendant Taser breached their duty by negligently designing, manufacturing, assembling, testing, inspecting, labeling, packaging, failing to warn, marketing, distributing, instructing/training law enforcement personnel about, and/or selling the subject tasers when such products were not in reasonably safe condition for foreseeable use for reasons including, but not limited to the following:

    a.    Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would not kill or seriously injure the intended target, including Plaintiff-decedent;

    b.    Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would not subject the intended target, including Plaintiff-decedent, to an increased and unreasonable risk of

42

death or serious bodily injury;

c.    Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would not permit an unreasonably strong level of electrical shock to be delivered to an intended target, including Plaintiff-decedent;

d.    Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would not permit an unreasonable duration of electrical shock to be delivered to an intended target, including Plaintiff-decedent;

e.    Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would adequately convey, instruct, or warn users, including law enforcement personnel, of the serious health risks associated with multiple taser deployment;

f.    Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would adequately convey, instruct, or warn users, including law enforcement personnel, of the serious health risks associated with a prolonged exposure and/or a significant aggregate exposure to an electrical current;

g.    Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would provide adequate and reasonable training instructions and warnings to users, including law enforcement personnel, regarding the proper and safe use of the tasers; and

h.    Failing to properly design, manufacture, test, assemble, market, distribute, train/instruct law enforcement personnel, and/or sell the subject tasers in a manner that would meet all applicable and reasonable safety standards including but not limited to Defendant Taser's internal standards and other reasonable industry standards.

155.    The negligence described above directly and proximately caused Plaintiff-decedent's catastrophic injuries and death, in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff-decedent's injuries and caused his death.

43

156.    The actions of Defendant Taser, as set forth above, constitute willful and wanton misconduct in disregard of the rights and safety of Plaintiff-decedent, and warrant the imposition of punitive damages against Defendant Taser.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT IX
### PLAINTIFFS v. THE LAW ENFORCEMENT DEFENDANTS & DEFENDANT TASER
### WRONGFUL DEATH

157.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

158.    Plaintiffs are the legal representatives of the Estate of Robert Neill.

159.    Plaintiffs bring this action pursuant to 42 Pa. C.S.A. § 8301 and Pennsylvania Rule of Civil Procedure 2202 and claims all benefits of the Wrongful Death Act on behalf of themselves, and all other persons entitled to recover under the law.

160.    By reason of the death of Robert Neill, his Administrators and/or his appropriate beneficiaries have suffered pecuniary losses as well as funeral expenses and expenses of administration necessitated by reason of the injuries which caused the death of Robert Neill.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT X
### PLAINTIFFS v. THE LAW ENFORCEMENT DEFENDANTS & DEFENDANT TASER
### SURVIVAL

161.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth fully herein.

162.    Plaintiffs bring this action on behalf of the Estate of Robert Neill, pursuant to 42 Pa. C.S.A. § 8302  and claim all benefits of the Survival Act on behalf of themselves and all other persons entitled to recover under the law.

163.    Plaintiffs claim, on behalf of Plaintiff-decedent, all damages suffered by Plaintiff-decedent's estate, including, but not limited to, the great conscious pain and suffering sustained by Plaintiff-decedent, as well as the loss of past and future earnings and earning capacity suffered from November 6, 2010 onwards.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages, for punitive damages and for costs in excess of $75,000.00 and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.

BY: _____
    Stewart J. Eisenberg, Esquire    (SJE6720)
    Daniel Jeck, Esquire
    Daniel J. Sherry Jr., Esquire
    Attorneys for Plaintiffs

DATED:    June 13, 2012